UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLE LYNNE WICKERSHAM,

    Plaintiff,

v.                                           Case No.:  8:22-cv-1403-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Nicole Lynne Wickersham seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

C.  **Procedural History**

Plaintiff applied for supplemental security income benefits on August 27, 2019, alleging disability beginning on August 27, 2019. (Tr. 110, 203-205). The application was denied initially and on reconsideration. (Tr. 110, 126). Plaintiff

requested a hearing and on September 28, 2021, a hearing was held before Administrative Law Judge ("ALJ") Elving Torres. (Tr. 47-65). On November 16, 2021, the ALJ entered a decision finding Plaintiff not under a disability since August 27, 2019, the date the application was filed. (Tr. 18-33).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on May 9, 2022. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on June 21, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.     Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 27, 2019, the application date. (Tr. 21). At step two, the ALJ found that Plaintiff had the following severe impairments: "hepatitis C; status post thoracic spine fusion at T8-T9 with deformity, sclerosis, and anterolisthesis; cirrhosis of liver, stage 4; marked splenomegaly; bipolar disorder with anxiety and attention deficit hyperactivity disorder (ADHD) associated with polysubstance abuse, including IV drugs, crack cocaine and opioid use, which are reportedly in remission without rehabilitation; and obesity." (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 21).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b), except she can stand or walk for about 2 hours total in an 8-hour workday, she can sit for about 6 hours in an 8-hour workday with all positions considering the usual scheduled breaks every two hours; she can overhead reach with her right upper extremity frequently; she must avoid work activities involving a risk of cutting and bleeding wherein others could be contaminated, such as in food preparation; she can understand and carryout routine, repetitive, unskilled tasks, make basic decisions, and adjust to simple changes in a work setting; and interaction with the public, coworkers and supervisors is limited to frequent.

(Tr. 25).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. 31). At step five, the ALJ found that considering Plaintiff's age (35 years old on the date the application was filed), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) router, DOT 222.587-038,[1] light, unskilled, SVP 2

(2) ticket seller, DOT 211.467-030, light, unskilled, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

    (3)   office helper, DOT 239.567-010, light, unskilled, SVP 2.

(Tr. 32). The ALJ concluded that Plaintiff had not been under a disability since August 27, 2019, the date the application was filed. (Tr. 33).

## II.    Analysis

On appeal, Plaintiff raises six issues:

(1)    Whether the ALJ properly evaluated Plaintiff's mental impairments in assessing the RFC;

(2)    Whether the ALJ properly relied on the vocational expert's testimony to conclude that Plaintiff could perform a significant number of jobs in the national economy;

(3)    Whether the ALJ's erred by failing to consider the State Agency Explanation of Determination documents;

(4)    Whether the ALJ's RFC assessment properly included findings from State agency medical consultant Gary Smith, M.D. in that the ALJ found Dr. Smith's opinion persuasive;

(5)    Whether the ALJ's RFC assessment properly included findings from State agency psychological consultant Judith Myers, Psy.D. in that the ALJ found Dr. Myers' opinion persuasive; and

(6)    Whether the ALJ fulfilled his duty to develop the record in declining to enter records from Plaintiff's prior filing in the current filing.

(Doc. 18, p. 1-2). The Court begins with the second issue about whether the ALJ properly relied on the vocational expert's testimony and whether there were a significant number of jobs in the national economy that Plaintiff could perform.

### A.     Conflicts Between the Vocational Expert's Testimony and the DOT

Plaintiff argues that the ALJ erred in not recognizing and resolving two apparent conflict between the ALJ's RFC assessment and the vocational expert's testimony. (Doc. 18, p. 19-23). First, Plaintiff argues that there is an apparent conflict between Plaintiff's RFC limitation of standing or walking for two hours in an eight-hour workday and the light exertional level jobs the vocational expert identified. And second, there is an unresolved apparent conflict between the job of ticket seller and the ALJ's RFC assessment that Plaintiff is limited to understanding and carrying out routine, repetitive, unskilled tasks, making basic decisions, and adjusting to simple changes in a work setting. (Doc. 18, p. 23). The Court addresses the second apparent conflict first.

At step five of the sequential evaluation, the ALJ found Plaintiff capable of performing the jobs of router, ticket seller, and office helper. (Tr. 32). According to the DOT, one of these jobs – ticket seller – requires a reasoning level of three. *See* 211.467-030 Ticket Seller DICOT 211.467-030, 1991 WL 671853. Plaintiff argues that a reasoning level of three is an apparent conflict with an RFC limitation of being limited to routine, repetitive, and unskilled tasks. (Doc. 18, p. 22-23). Plaintiff claims that the ALJ did not address this unresolved conflict. (Doc. 20, p. 7, 8).

The Commissioner concedes that the Eleventh Circuit previously found an apparent conflict between the performance of reasoning level three and a limitation

to simple, routine, and repetitive tasks. (Doc. 22, p. 12). Even so, the Commissioner contends that even if the ticket seller job is eliminated, the two remaining jobs of router and office helper leave 49,000 of the 64,000 identified jobs remaining, or around 77% of the jobs remain viable. (Doc. 22, p. 12-13). Thus, the Commissioner claims any error is harmless.

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

In *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021), the Eleventh Circuit evaluated whether reasoning level three is consistent with a limitation to simple routine tasks. The Court held that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning. *Id.* at 1317. The Court added that "[t]his does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with

level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Id.*

Here, the RFC contained a limitation to being able to understand and carryout routine, repetitive, unskilled tasks, make basic decisions, and adjust to simple changes in a work setting. (Tr. 25). Thus, the ALJ erred in listing the job of ticket seller without identifying and resolving the apparent conflict between these limitations and a reasoning level of three. But the ALJ's failure to address the apparent conflict does not end the matter. *Id.* A court must consider – as the Commissioner urges – whether the error was harmless. *Id.*

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and

without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

The issue here is whether the remaining two jobs exist in significant numbers in the national economy. In *Viverette*, the vocational expert testified that there were 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. 13 F.4th at 1318. The ALJ referenced the jobs collectively and treated the three occupations (one of which was off the table) cumulatively to determine whether jobs existed in significant numbers in the national economy. *Id.* "In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs." *Id.* And the Court clarified that this finding "'is a question of fact to be determined by a judicial officer [i.e., the ALJ].'" *Id.* (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) and *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005)). The Court found:

> Here, the ALJ based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an

> apparent conflict that affected 104,000 of those jobs. Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy. Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.

*Id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)).

Here, the ALJ similarly referenced the vocational expert's testimony collectively concerning the number of jobs available in the national economy. (Tr. 33). The ALJ referenced the vocational expert's testimony that the router job has 35,000 jobs available nationally, the ticket seller job has 15,000 jobs available nationally, and the office helper job has 14,000 jobs available nationally. (Tr. 32). The ALJ concluded, "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 33). The ALJ did not, however, find the number of router or office helper jobs, taken singly or in combination, existed in significant numbers in the national economy. (Tr. 32-33); *see Viverette*, 13 F.4th at 1318. While only around 23% of the jobs would be eliminated, this still amounts to 15,000 jobs in the national economy. As in *Viverette*, the Court hesitates to make any factual determination

about whether a significant number of jobs exists in the national economy if the ticket seller position is eliminated from these numbers.

Thus, as in *Viverette*, the Court cannot substitute its judgment for that of the ALJ to determine whether without the ticket seller job, the other jobs existed in significant numbers in the national economy sufficient to support a finding of not disabled. Remand is warranted on this issue.[2]

### B. Explanations of Determination

Plaintiff argues that the Social Security Administration repeatedly advised her that she could perform work that requires only a very short, on-the-job training period. (Doc. 18, p. 24 (citing Tr. 111, 113)). Plaintiff then contends that jobs that require only a very short, on-the-job training period equate to SVP 1 positions and the ALJ erred by finding Plaintiff could perform jobs at an SVP 2 level. (Doc. 18, p. 24).

As the Commissioner contends, the Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-

---

[2] At the close of the *Viverette* opinion, the Court found that even if the ALJ had made specific findings on the number of remaining jobs in the national economy, there was an issue with the number of jobs in the remaining two occupations. *Viverette*, 13 F.4th at 1319. When the vocational expert testified about the number of jobs in a certain Standard Occupational Classification ("SOC") code, she did not know the level of reasoning for the other DOT occupations within the SOC code. *Id.* While this issue is not present here, the language of the decision demonstrates that the potential overstatement of the number of jobs was a separate basis to remand the case and therefore does not render the instant case distinguishable. *Id.* at 1318-19.

AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is "'inherently neither valuable nor persuasive.'" *Id.* (citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how he considered such evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the ALJ was not required to consider the Explanations of Determination in rendering a decision.

### C.   Remaining Issues

Plaintiff contends that the ALJ did not properly evaluate her mental impairments in assessing the RFC, did not properly assess two State agency medical findings, and did not fully develop the record. Rather than deciding these issues, because this action is remanded on other grounds, on remand, the Commissioner is directed to reconsider these issues.

### III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence

four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the step five findings and reevaluate Plaintiff's mental impairments in assessing the RFC, reevaluate two State agency medical findings, and reconsider whether the record should be more fully developed. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 14, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties